UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 09-cv-00910-REB

ZOUHEIR KANJO,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

## ORDER AFFIRMING COMMISSIONER

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#3], filed April 21, 2009, seeking review of the Commissioner's decision denying plaintiff's claim for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that he is disabled as a result of atrial fibrillation, headaches, and back pain. After his applications for disability insurance benefits and supplemental security income benefits were denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on June 26, 2008. At the time of the hearing, plaintiff was 60 years old. He has a high school education and past relevant work experience as a waiter and cook. He has not engaged in substantial gainful

activity since January 1, 2006, his alleged date of onset.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability insurance or supplemental security income benefits. Although the medical evidence established that plaintiff suffered from severe impairments, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ found that plaintiff had the residual functional capacity to perform a range of light work with limitations that nevertheless comported with his past relevant work. He therefore found plaintiff not disabled at step four of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II. STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. **See Kelley v. Chater,** 62 F.3d

335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. §§ 404.1520(b)-(f).[1] *See also Williams v. Bowen* 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.* A finding that

---

[1] Throughout this opinion, although I cite only to sections of Part 404 of Title 20 C.F.R., which include the Commissioner's regulations relating to disability insurance benefits, identical, parallel regulations can be found in Part 416, relating to supplemental security income benefits.

3

the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. ***Brown***, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. ***Id.***

### III. LEGAL ANALYSIS

Plaintiff maintains that the ALJ failed to properly weigh and credit the opinion of his treating physician, Dr. Alan Zacharias. He also argues that the ALJ erred in failing to make findings regarding the specific physical and mental demands of his past relevant work. As neither these arguments presents reversible error, I affirm.

4

Plaintiff saw Dr. Zacharias on four occasions over a period of four months in 2006, for treatment of headaches. (*See* Tr. 251-255.) Despite the apparent lack of success of the treatments tried to remedy this condition, plaintiff did not continue with Dr. Zacharias after April 6, 2006. Nevertheless, on April 30, 2008, Dr. Zacharias completed a "Medical Source Statement of Ability To Do Work-Related Activities (Physical)" on plaintiff's behalf. (Tr. 516-521.) Plaintiff maintains the ALJ erred in failing to afford this opinion significant, if not controlling, weight.

The opinion of a treating source is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record" and cannot be rejected absent good cause for specific and legitimate reasons clearly articulated in the hearing decision. 20 C.F.R. § 404.1527(d)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). Nevertheless, a treating source opinion may be rejected where it is brief, conclusory, or unsupported by the medical evidence. *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).

The ALJ here discounted Dr. Zacharias's opinion because it was not based on any contemporaneous examination and thus appeared to be "largely based on [plaintiff's] subjective complaints." (Tr. 29.) Although plaintiff is correct that a physician's reliance on a plaintiff's subjective reports of his symptoms is not in itself a sufficient basis on which to discredit a medical source opinion, *see Nieto v. Heckler*, 750 F.2d 59, 60-61 (10th Cir. 1984), neither can a finding of disability be based merely on the claimant's say so, *Bernal v. Bowen*, 851 F.2d 297, 300 (10th Cir. 1988). The

5

ALJ here noted that Dr. Zacharias had not seen plaintiff for more than two years prior to rendering this allegedly controlling opinion, and it thus appeared to be little more than a bare reiteration of plaintiff's own report of his abilities. (Tr. 29.) This is not a case, therefore, where the treating source, having a long-standing relationship with the plaintiff, is in a superior position to determine whether the plaintiff's reports are credible in light of his ongoing course of treatment. The ALJ's reasoning therefore supports his conclusion.

Yet to the extent the ALJ failed to further articulate good cause for the weight given Dr. Zacharias's opinion, any such error is undoubtedly harmless, as there were ample other justifiable reasons for not affording that opinion weight. **See Bernal**, 851 F.2d at 303. For example, Dr. Zacharias's treatment relationship with plaintiff, in addition to being rather temporally distant by the time of the hearing, was relatively brief in its own right. **See** 20 C.F.R. § 404.1502 (treating source is one with whom claimant has "ongoing treatment relationship," i.e., that claimant sees source "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [his] medical condition(s)"); **id.** § 404.1527(d)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). Relatedly, given that Dr. Zacharias had not been plaintiff's treating physician during the majority of the period of his alleged disability, his opinion was not entitled to controlling weight in any event. **See Brown v. Astrue**, 344 Fed. Appx. 16, 20-21 (5th Cir. Sept. 2, 2009); **Monette v. Astrue**, 269 Fed. Appx. 109, 112-13 (2nd Cir. March 14, 2008).

In addition, Dr. Zacharias's own treatment notes, covering four visits over a period of four months in 2006, do not of their own force support a conclusion that plaintiff's headaches were disabling even during the time plaintiff was under his care.[2] *See Fessler v. Apfel*, 11 F.Supp.2d 1244, 1253 (D. Colo. 1998) (reasonable to conclude that condition did not impair ability to work for period of at least twelve months where claimant sought treatment for it only briefly). Moreover, Dr. Zacharias did not mention headaches at all in his 2008 opinion, but instead based the limitations he suggested solely to plaintiff's atrial fibrillation. (***See*** Tr. 516-521.)[3] It is not at all clear why Dr. Zacharias's admittedly impressive credentials in neurology should afford him any particular insight into the potential limitations caused by plaintiff's cardiovascular impairments.[4] ***See*** 20 C.F.R. § 404.1527(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").[5] In sum, the record reveals ample reason to discredit Dr. Zacharias's opinion, and the ALJ did not err in doing so.

---

[2] Moreover, although plaintiff testified at the hearing that he continues to suffer from daily headaches, he apparently has not sought further treatment for this condition, nor shown justification for failing to do so, entitling the ALJ to draw an inference adverse to disability. ***See Crawford v. Chater***, 997 F.Supp. 1387, 1395-96 (D. Colo. 1998).

[3] Plaintiff's treating cardiologist, Dr. Daniel White, himself declined to render an opinion regarding work-related functional limitations, deferring to a primary care physician or occupational specialist. (Tr. 515.)

[4] Relatedly, plaintiff's argument that the record fails to contain evidence of the credentials of the consultative examiners on whose opinions the ALJ ultimately did rely does not merit reversal. Plaintiff makes no showing that either of these experts was unqualified, either in his stated specialty or in general, or less qualified than Dr. Zacharias.

[5] Nor do any of these infirmities oblige the ALJ to recontact Dr. Zacharias for further clarification of his opinion. That duty is triggered only when the ALJ is unable to reach a conclusion regarding disability based on the evidence before him, not merely because he rejects the treating source's opinion. ***See White v. Barnhart***, 287 F.3d 903, 908 (10th Cir. 2001).

Nor do I find reversible error in the ALJ's conclusion that plaintiff's atrial fibrillation itself was not disabling.[6] Plaintiff's allegation that the ALJ "cherry-picked" the record, emphasizing more minimal findings while failing to acknowledge more serious ones, *see* **Robinson v. Barnhart**, 366 F.3d 1078, 1083 (10th Cir. 2004), is not supported by a review of the ALJ's decision or the record evidence. Indeed, nothing in the record contradicts the ALJ's salient finding that plaintiff's condition was generally controlled, apart from two relatively brief periods in 2006 and 2008, when plaintiff experienced recurrent, breakthrough episodes of atrial fibrillation and ultimately underwent cardiac ablation.[7] (Tr. 30-31, 285-316.)[8]

---

[6] It should be noted also that plaintiff first suffered from symptoms of this condition, and had similar difficulties in controlling them, as early as 2001, five years prior to his alleged date of onset and during a period in which he continued to work. (Tr. 314.) *See* 20 C.F.R. § 404.1520(b) (claimant who is performing substantial gainful activity is not disabled regardless of medical condition or any other consideration).

[7] Ablation refers to the "removal of material from the surface of an object by vaporization, chipping, or other erosive procedures." Wikipedia, *Ablation* (available at http://en.wikipedia.org/wiki/Ablation) (last accessed September 21, 2010). In this case, ablation refers to destroying, via a catheter, a small amount of heart tissue that is the source of electrical irregularity, thereby restoring normal heart rhythm. Heart Rhythm Society, Patient & Public Education, *Cardiac Ablation* (available at http://www.hrspatients.org/patients/treatments/cardiac_ablation.asp) (last accessed September 21, 2010).

[8] In the latter part of 2005 and the first several months of 2006, stopped taking Amiodarone, on which he had been doing well, in anticipation of an ablation procedure, which was postponed when plaintiff did not initially experience breakthrough episodes of atrial fibrillation. (Tr. 296-297, 298-300, 301-305.) Plaintiff had another episode that April, but declined "any therapeutic option which has any significant risk involved," including restarting Amiodarone or ablation. (Tr. 292-295.) Following several more episodes of atrial fibrillation, however, plaintiff consented first to a cardioversion (i.e. electroshock) in May (Tr. 258), and then ablation in June, 2006 (Tr. 324-329). Although plaintiff reported a week later that he "generally [did] not feel well" (Tr. 447), the record contains no evidence that he sought follow-up care for atrial fibrillation again until January, 2008 (Tr. 442-446, 492). At that time, he was started on Norpace, which initially seemed to provide substantial relief. (Tr. 492.) By April, however, plaintiff had breakthrough episodes again. (Tr. 495.) He underwent a second ablation procedure in early May, 2008. (Tr. 467-470, 499, 502, 505.) Two weeks later, he reported that his post-procedure fatigue was improving (Tr. 508), and by that June, just a few weeks prior to the administrative hearing, Dr. White reported that the procedure "was successful," noting that plaintiff "appears to be doing quite well," and had "no recurrence of palpitations." (Tr. 511.)

8

Given these considerations, I cannot say the ALJ erred in relying on the contrary opinions of the consultative examiners in determining plaintiff's residual functional capacity. (*See* Tr. 31-32, 474-482, 483-490.) Both reports include quite detailed and thorough narratives assessing the medical and other evidence of record, including the opinion of Dr. Zacharias. (Tr. 475, 483.) It is the province of the ALJ to weigh and resolve such conflicts in the evidence. **Reyes v. Bowen**, 845 F.2d 242, 245 (10th Cir. 1988); **Gleason v. Apfel**, 1999 WL 714172 at *4 (D. Kan. Sept. 1, 1999). In light of the infirmities noted in Dr. Zacharias's opinion, I find that the ALJ's determination in this regard does not violate the treating physician rule and is supported by substantial evidence.

Plaintiff also argues that the ALJ failed to properly assess the physical and mental demands of his past relevant work, questioning him only minimally on that topic during the hearing. This argument fails for at least two reasons. First, the particulars of plaintiff's past job duties was fully detailed in the Work History Report submitted with his applications for benefits. (Tr. 179-183.) Second, the vocational expert who testified at the hearing relied on the *Dictionary of Occupational Titles* ("*DOT*") to opine, *inter alia*, that plaintiff could perform his past relevant work as it is generally performed in the national economy. (Tr. 59.) *See* 20 C.F.R. § 404.1566(d)(1); **Andrade v. Secretary of Health & Human Services**, 985 F.2d 1045, 1051-52 (10th Cir. 1993). The *DOT* defines the demands of jobs as generally performed in the economy and thus provides a sufficient basis for comparison of a claimant's limitations to the demands of different jobs. **See Social Security Ruling 82-61**, 1982 WL 31387 at *1 (SSA 1982) (determination of residual functional capacity supported by substantial evidence if

9

coextensive with the demands of job either as generally performed or as plaintiff actually performed it); ***Andrade***, 985 F.2d at 1050-51 (same). This argument therefore fails.[9]

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

Dated September 21, 2010, at Denver, Colorado.

BY THE COURT:

Bob Blackburn
Robert E. Blackburn
United States District Judge

---

[9] Plaintiff maintains that 58 pages of records from Boulder County Hospital from May 26 through December 30, 2008, submitted to the Appeals Council but not made part of the transcript on appeal should be considered on remand. Because plaintiff does not attach these documents to his brief or otherwise make them part of the record before me, it is impossible for me to say definitively that they would have supported a conclusion contrary to the Commissioner's disability determination.